No. 20.—JOHN T. BOOTH and another, plaintiffs in error, *vs.* MARTIN W. STAMPER, defendant.

[1.] The Inferior Courts in this State have not the power and authority, under the Constitution and Laws thereof, to grant new trials.

[2.] Courts of Equity have jurisdiction to order new trials in a Common Law Court, after judgment, on a proper case being made ; but it is a jurisdiction which should be exercised with great caution and circumspection.

In Equity, in Talbot Superior Court.   Tried before Judge ALEXANDER, September Term, 1848.

Plaintiffs in error filed their bill in Talbot Superior Court, charging that Martin W. Stamper brought an action of assumpsit in the Inferior Court of said County, December Term, 1842, against Booth, founded on a promissory note for $400, given to one John C. Waters, or bearer ; that the consideration of said note was for money won at gaming ; that Booth filed his plea, and summoned a witness by whom the fact could be proved ; that some short time before the trial, Raines, as the agent of Booth,

proposed to George W. Towns, of the firm of Towns & Smith, attorneys for Stamper, and who, also, in connexion with Edmund H. Worrill, were attorneys in another cause pending in said Court against Booth, to place both of the causes on the appeal docket of the Superior Court, by consent; that Towns consented thereto, provided Worrill would consent; that subsequently Worrill consented; thereupon, Raines instructed the counsel of Booth to discharge the witness who was in attendance, and Raines left the Court under the belief that the cause would not be tried; that when the cause was called for trial, the counsel for Stamper denied that said agreement had any reference to this cause, and insisted upon going to trial; whereupon, their witness and client being absent, counsel for Booth were forced to confess judgment to the plaintiff.

The bill farther charged, that Booth was unable to give security, and thereby enter an appeal, but filed his affidavit, and prayed an appeal, under the Act of 1842, passed pending this suit; which appeal was subsequently dismissed, on the ground that the case was not within the provisions of the Statute; that a *fi. fa.* had been issued and levied on a negro boy, Peter, to which Raines had interposed his claim, which claim was still pending in Talbot Superior Court.

The bill prayed a new trial on the suit on the note, and an injunction on the *fi. fa.*

By an amendment, it was charged, that the inducement to make the agreement with said Towns was, that it was inconvenient for Booth and his agent to attend the Court, which fact was communicated to said Towns. At the trial, when the agreement was repudiated, said Booth's attorneys moved the Court for a continuance, which was refused; that Booth and Raines both lived some sixteen or seventeen miles from the Court House, and did not know of the cause being forced to trial until after the adjournment of the Court, so that they could not instruct their counsel to move for a new trial. "

Upon the trial, the Jury found for the complainants, and upon the appeal, the counsel for defendant moved to dismiss the bill, on the ground that there was no equity therein, and that the complainants had a complete remedy at Common Law.

Which motion was sustained by the Court, and the bill was dismissed.

To which decision the complainants, by their counsel, excepted, and now allege the same to be erroneous.

B. HILL and M. J. WELLBORN, for·plaintiffs in error, cited and commented on the following authorities:

1 *J. J. Marsh. R.* 458.   *Norton vs. Woods,* 5 *Paige,* 250.   2 *Story Eq.* 182.   2 *Kelly,* 279.   3 *Ib.* 228.   4 *Georgia Rep.* 175.

H. L. BENNING, for defendant, cited—

2 *Story Eq.* §188, 894, '5.   2 *Kelly,* 279.   3 *Ib.* 78.   1 *Ib.* 136. 1 *Schoales and Lefroy,* 205.   1 *Turn. and Russ.* 319.   *Mitf.* 131. 1 *John. Ch.* 320.   6 *Ib.* 479.   7 *Term R.* 269.   7 *Cranch,* 332.   2 *Tidd,* 905.   *Prince Dig.* 909, 910.

*By the Court.*—WARNER, J. delivering the opinion.

The error assigned to the judgment of the Court below, is the dismissal of the complainants' bill at the trial term of the cause on the appeal, for want of equity.

[1.] It appears from the bill of exceptions, that the Court below predicated its judgment on the ground, that the defendant in the Inferior Court, could have moved for a new trial in that Court, and failing to do so, lost his remedy at Law, and had none in Equity.   Have the Inferior Courts in this State, under the Constitution and laws thereof, the power and authority to grant new trials?   By the first section of the third article of the Constitution, it is declared, " The Superior Court shall have *exclusive* jurisdiction in all criminal cases, (except as relates to people of color, &c., and which does not relate to the jurisdiction of the Inferior Courts,) which shall be tried in the County where the crime was committed: and in all cases respecting the titles to land, which shall be tried in the County where the land lies; and, also, concurrent jurisdiction in all other civil cases, and shall have power to correct errors in inferior judicatories, by writ of *certiorari*, and to grant *new trials in said Superior Courts*, on proper and *legal* grounds; and in all cases where a new trial shall be so allowed, *the Judge* allowing the same, shall enter on the minutes of said Court his reasons for the same; and the said Superior Courts

shall have appellate jurisdiction in such other cases as may be pointed out by law, in cases arising in inferior judicatories, which shall in no case tend to remove the cause from the County in which the action originated. The Inferior Courts shall also have concurrent jurisdiction in all civil cases, except in cases respecting the titles to lands, which shall be tried in the County wherein the defendant resides," &c. *Prince*, 909, '10. The first part of the clause of the Constitution above cited, it will be perceived, has reference to the *exclusive* jurisdiction of the Superior Court in all criminal cases, and in all cases respecting titles to land, to correct errors in inferior judicatories by writ of *certiorari*, and to grant new trials in said Superior Courts, on proper and *legal* grounds, and also *concurrent* jurisdiction in all *other civil cases.* The Inferior Courts also have concurrent jurisdiction in all civil cases, except in cases respecting the titles to lands, but *new trials* can only be granted in said *Superior Courts* on proper and *legal* grounds. The power to grant new trials is, by the Constitution, in our judgment, expressly restricted to the Superior Courts. The Superior Courts have *appellate* jurisdiction in cases arising in the *Inferior Courts*, and when the cause shall be finally tried in the appellate tribunal, that Court is clothed with the power to grant a new trial, on proper and legal grounds; and *the Judge* allowing the same, is required to enter on the minutes of *said Superior Court*, his reasons therefor. By the 58th section of the Judiciary Act of 1799, passed the next year after the adoption of the Constitution of 1798, it is declared—" All new trials shall be had by a Special Jury, to be taken from the Grand Jury list of the County." *Prince*, 432. This legislative enactment of 1799, affords strong evidence as to the construction given to the Constitution by the Legislature of that year, in favor of restricting the power to grant new trials to the Superior Courts.

[2.] Have Courts of Equity jurisdiction to grant new trials in the Courts of Common Law, after judgment rendered therein? That Courts of Equity have jurisdiction to order new trials in the Common Law Courts, on a proper case being made, we think is quite clear; but it is a jurisdiction which should always be exercised with *great caution* and circumspection. *Floyd vs. Jayne,* 6 *John. Ch. Rep.* 481. *Bateman vs. Willoe,* 1 *Schoales and Lefroy,* 201. In *Stroup vs. Sullivan & Black,* (2 *Kelly,* 275,) this Court stated the rule to be, that a Court of Equity will not grant

Booth and another *vs.* Stamper. .

relief against a judgment at Law, on the ground of its being un-conscientious, unless the defendant in the judgment was entirely ignorant of his defence pending the suit, or unless, without any default or neglect on his part, he was prevented, by *fraud* or ac-cident, or the *act of the opposite party*, from availing himself of his defence, or by some unavoidable necessity.

What are the facts in this case, and are they sufficient to au-thorize a Court of Equity to grant a new trial? The suit was pending in the Inferior Court of Talbot County, to recover the amount of a promissory note, made by Booth, the defendant. The defence made by the defendant's plea was, that the note was given for a gaming consideration. At the trial term, it being inconvenient for the defendant and his agent, Raines, to attend the Court, a proposition was made to the plaintiff's attornies, to transfer the cause to the appeal docket of the Superior Court, by consent, which was agreed should be done; whereupon Raines, the agent of the defendant, instructed his counsel to discharge the witness who was in attendance upon the Court, and the defen-dant and his agent went home, a distance of about sixteen miles, under the full belief that the case would not be tried. When the cause was called in its order upon the docket for trial, the coun-sel of the plaintiff denied the agreement, and insisted upon a trial. The witness and client both being absent, the counsel for the de-fendant was forced to confess judgment to the plaintiff, for the amount of the note, with interest. Owing to the distance of the defendant's residence from the Court, he did not know that his cause had been forced to trial until after the adjournment of the Court; too late to instruct his counsel to have moved for a new trial, even had the Court the power to grant it. The affidavit of the witness who was discharged from his attendance upon the Court, in consequence of the agreement, is also attached to the complainant's bill, as an exhibit, in which he identifies the note, was present when it was executed, and states that the considera-tion for which the note was given, was money won of the defend-ant at the game of " faro."

It appears that the defendant had a good and valid defence to the note; that he was present at the Court, with his witness, to establish that defence; that confiding in the agreement made with the counsel of the plaintiff, to have the case transferred to the appeal docket of the Superior Court, by consent, he left the Court

and went home, as did the witness; that the counsel of the plaintiff repudiated the agreement and forced the cause to trial, and a judgment was rendered against him.

The defendant has evidently been entrapped by the course pursued by the plaintiff's counsel, and deprived of his defence, by the *act of his adversary*, without *fault* on his part, so far as the record discloses.

The conduct of the counsel for the plaintiff operated, to use the mildest term, as a *surprise* upon the defendant, and has enabled him to obtain an unconscientious advantage over him, which a Court of Equity will not permit him to retain.    For the reasons already stated, the Common Law Court, in which the case was pending, could not afford the complainant adequate relief; and, in our judgment, the facts of this case afford *strong grounds* for the exercise of the equitable jurisdiction of a Court of Chancery, to grant a new trial, so as to place the parties back in the same position they were before the judgment was rendered against the defendant in the Inferior Court.    Let the judgment of the Court below be reversed, and the cause reinstated.